28 F.3d 108
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Roy RUFFINO; Rick Swanson; Jeff Deutsch; Marlin "Duke"
Circle; Michael Donovan; Andrew Jr. Tooyak; Daniel R.
Nelson; Michael McCarthy; Hanns Swiss; Lynne Athmann;
Ronald W. Earwood; James Lomer; Jerry McFarland; Samuel
David Real; Tim Routen; Robert Krogseng and Dan Shirey, on
behalf of themselves and all other employees of the North
Slope Borough similarly situated, Plaintiffs-Appellants,
v.
NORTH SLOPE BOROUGH, Defendant-Appellee.
 No. 92-36866.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 7, 1994.*
Decided May 23, 1994.
 
 Before: TANG, BOOCHEVER, and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellants are former or current law enforcement officers employed in remote Alaskan villages by the North Slope Borough Department of Public Safety ("the Borough"). The officers brought an action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Secs. 201-219 (1988), for overtime compensation. The district court denied various motions brought by the officers, and rendered judgment based on the jury's verdict for the Borough. The officers appeal.
 
 
 3
 We have jurisdiction under 28 U.S.C. Sec. 1291 and affirm.
 
 DISCUSSION
 I. The compensability of on-call time
 
 4
 The FLSA requires overtime compensation for employees who work beyond 40 hours per week. See 29 U.S.C. Sec. 207(a)(1). However, public agencies are exempt from paying overtime to fire protection and law enforcement personnel for a certain period beyond 40 hours per week according to the formula set forth at 29 U.S.C. Sec. 207(k). Applying this formula, the Borough need not pay overtime to the officers until they serve over 85 hours per two-week pay period.
 
 
 5
 We addressed the applicability of overtime provisions to "on-call" time in Owens v. Local No. 169, 971 F.2d 347 (9th Cir.1992). To determine whether on-call time is spent "predominantly for the employer's benefit" and thus is compensable under the FLSA, Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944), we look to "(1) the degree to which the employee is free to engage in personal activities; and (2) the agreements between the parties." Owens, 971 F.2d at 350.
 
 
 6
 Courts have considered a number of factors in determining whether an employee plaintiff had use of on-call time for personal purposes: (1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time. Such a list is illustrative, not exhaustive. No one factor is dispositive.
 
 
 7
 Id. at 351 (footnotes and citations omitted).
 
 
 8
 Some of the factors favor the officers' claim for overtime on-call compensation while alone in the village. The Borough required 24-hour coverage of the villages. If an officer was covering a village alone with no partner, the officer was required to stay within the area (usually within 1-2 miles of the village) to ensure radio contact and quick response time. There were thus rather rigorous geographical restrictions on the officers' movements.
 
 
 9
 The officers also presented evidence that they were subject to interruptions due to the villagers' direct access to the officers' homes. However, the record on appeal does not establish that these interruptions occurred after the required hours per week had been served. Cf. Renfro v. City of Emporia, Kan., 948 F.2d 1529, 1538 (10th Cir.1991) (fire fighters required to answer an average of four to five calls per day during off-duty time were entitled to overtime compensation), cert. dismissed, 112 S.Ct. 1310 (1992).
 
 
 10
 Finally, officers serving alone in the villages could not trade on-call responsibilities. In Owens, the on-call policy was held not to create compensable waiting time in part because as part of an on-call pool, the employees could decline to respond to after-hours calls. 971 F.2d at 357. Cf. Brock v. El Paso Natural Gas Co., 826 F.2d 369, 373-74 (5th Cir.1987) (on-call policy not unduly restrictive in part because employees could trade on-call responsibilities).
 
 
 11
 Other factors cut against the officers' claim for compensable on-call time. The officers serving with a partner were not subject to such excessive geographical restrictions, the frequency of after-hours calls was reduced, and the partners could trade on-call status.
 
 
 12
 Most significantly, even the officers serving without a partner were able to engage in a substantial number of personal activities while on-call. The officers hunted and fished, exercised, engaged in various hobbies, socialized, took educational courses, and even worked second and third jobs. The evidence indicated that there were often long periods with little official enforcement activity in which the officers were free to pursue their personal interests.
 
 
 13
 While no one factor is dispositive, Owens, 971 F.2d at 351, the Department of Labor regulations focus on the employee's ability to engage in other activities while on-call. 29 C.F.R. Sec. 785.15 states that on-call time is compensable where "the employee is unable to use the time effectively for his own purposes." This court has found the nature of the personal activities in which an employee participated while on-call "an essential factor in the Supreme Court's 'primarily for the benefit of the employer' test." Owens, 971 F.2d at 356.
 
 
 14
 Moreover, courts have consistently held on-call time noncompensable where employees were able to participate in a substantial number of non-work activities while on-call. See Gilligan v. City of Emporia, Kan., 986 F.2d 410, 413 (10th Cir.1993) (on-call restrictions on personal activities of water and sewer department employees "not so prohibitive that it can be said that their on-call time is spent predominantly for the employer's benefit"); Owens, 971 F.2d at 353 (plaintiffs able to attend out-of-town sporting events, golf, bowl, attend church, take out-of-town trips on the weekends, engage in other employment, coach children's teams, attend school, participate in athletics, dine at restaurants, watch movies, fish and hunt, etc.); Bright v. Houston Northwest Medical Center Survivor, Inc., 934 F.2d 671, 673 (5th Cir.1991) (en banc) (plaintiff engaged in other activities away from work, such as shopping and occasionally going to restaurants), cert. denied, 112 S.Ct. 882 (1992); Boehm v. Kansas City Power and Light Co., 868 F.2d 1182, 1185 (10th Cir.1989) (free to use off-duty time as wished); Halferty v. Pulse Drug Co., 864 F.2d 1185, 1189 (5th Cir.1989) (on-call time not compensable where ambulance dispatcher who worked at home could entertain guests, sleep, watch television, do laundry, and babysit); Norton v. Worthen Van Serv., Inc., 839 F.2d 653, 655 (10th Cir.1988) (compensation denied where on-call time spent at friends' homes, church, laundromats, restaurants, and recreational facilities, demonstrating ability to engage in personal activities even where required to respond within fifteen to twenty minutes). But see Cross v. Arkansas Forestry Comm'n, 938 F.2d 912, 916-17 (8th Cir.1991) (on-call time compensable where the plaintiffs' activities were restricted by having to monitor radio transmissions).
 
 
 15
 While the officers serving alone did not receive respite from the 24-hour on-call status, they were nonetheless able to engage in a substantial number of personal activities. As in Owens, the broad scope of activities in which the officers were involved "demonstrates that each [officer] had the option to engage in personal activities of his [or her] choice while on call." Owens, 971 F.2d at 353.
 
 
 16
 Moreover, "[w]hether time is spent predominantely for the employer's benefit [is] dependent on all the circumstances of the case," Armour & Co., 323 U.S. at 133, and whether "such time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial court." Skidmore v. Swift & Co., 323 U.S. 134, 136 (1944). The jury found that none of the officers had compensable on-call time. This finding is supported by substantial evidence in the record.
 
 
 17
 The district court properly denied the motions for directed verdict, JNOV, and new trial.[1] A fortiori, the motion for partial summary judgment was properly denied due to the existence of genuine issues of material fact regarding the restrictiveness of the officers' on-call status.[2]
 
 II. The "flextime" system
 
 18
 Under the "flextime" system, officers were required to set-off extra hours worked in one day against "down time" during another day. The former Director of the Department of Public Safety, Larry Packer, testified that the Borough was concerned with the overall hours the officers worked during a two-week pay period (75 hours), although the officers' time cards reflected 7.5 hours of work per day.
 
 
 19
 The Borough personnel policies specify that each officer is required to work 37.5 hours per week,[3] the scheduling of the hours is left to the discretion of the officer, each officer shall have two days off per week at his or her discretion (subject to prior approval), and that the schedules "should be flexed as the particular needs of each village dictate[ ]." Overtime is paid for hours worked over 85 in any two-week pay period, and for over 12 hours worked during any 24 hour period.
 
 
 20
 The officers argue that due to the intermittent hours worked, the flextime system allowed the Borough to circumvent paying overtime to the officers. But, as explained below, the flextime system, itself, did not prevent the payment of overtime. To a considerable extent, the officers' real complaint is with the record-keeping system: the officers could not claim that the flextime system was used to circumvent paying overtime if they agreed that an accurate record of hours worked per day had been kept. The claims relating to the Borough's record-keeping are addressed in the next section.
 
 
 21
 The officers also claim that there was "no known or consistent beginning or end [to the work period]" so that no one "would know how many hours had been worked in any given day, week or month or when an overtime hour was reached." [Opening brief at 19.] However, there was indeed a defined two-week pay period. That an officer did not know how many hours had been worked in a given period of time is, again, an allegation regarding the failure of the record-keeping system.
 
 
 22
 The next complaint about the flextime system is that it is in reality a "compensatory time-off" policy, which the officers contend is illegal because the Borough's flextime system does not conform to 29 U.S.C. Sec. 207(o).[4] The officers imply that extra hours worked during a pay period were required to be "flexed" outside of that pay period at some future time (thus avoiding the Borough's responsibility to pay overtime for that pay period). However, the officers point to nothing in the record that proves that the flextime system was implemented in this way.[5] Uneven work days throughout a pay period does not create a compensatory payment system. Only when time off is given in lieu of overtime is a compensatory time system in place.
 
 
 23
 Finally, the officers briefly contend that the flextime system "allows an employer an indirect method of asserting impermissible waiver, estoppel, and good faith defenses." [Opening brief at 24 (footnotes omitted).] The officers fail to explain this argument. We "will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief." International Union of Bricklayers & Allied Craftsmen Local Union No. 20. v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir.1985) (emphasis added).
 
 
 24
 The officers do not point to provisions of the FLSA or its implementing regulations which require an employee to work a set number of hours per day, or which require an employee to serve in consecutive hours each day. The FLSA prevents an employer from requiring an employee to work more than a certain number of hours per week without paying overtime. There is nothing in the FLSA that would prevent the Borough from requiring the officers to work uneven work days (such as three hours one day, ten hours the next, etc.), as long as the time worked over the two-week period does not exceed 85 hours without payment of overtime. Accordingly, the officers have failed to demonstrate that they are entitled to judgment as a matter of law that the flextime policy violates the FLSA.
 
 
 25
 Furthermore, the jury found that none of the officers performed additional work time for which they had not been paid, thus rejecting the officers' claims that they worked over the maximum number of hours per two-week pay period due to the operation of the flextime system. The motions for partial summary judgment, directed verdict, JNOV, and new trial, all of which raised these arguments, were properly denied.
 
 III. The record-keeping system
 
 26
 The FLSA requires employers to keep accurate records of employee hours worked. See 29 U.S.C. Sec. 211(c) ("Every employer ... shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him...."); 29 C.F.R. Sec. 516.2(a) ("Every employer shall maintain and preserve payroll or other records containing the following information: (7) Hours worked each workday and total hours worked each workweek."); 29 C.F.R. Sec. 516.6(a) ("Each employer required to maintain records under this part shall preserve ... (1) ... all basic time and earning cards or sheet on which are entered the daily starting and stopping time of individual employees ... or the amounts of work accomplished by individual employees on a daily, weekly, or pay period basis.").
 
 
 27
 The officers contend that the Borough failed to keep accurate records and therefore should have had the burden of proof to disprove the officers' estimate of overtime worked. In Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-688 (1946), the Supreme Court held that where the employer has failed to keep accurate and adequate records of hours worked and the employee proves he has not been compensated for work done, the burden of proof shifts to the employer to rebut the estimate of hours worked by the employee.
 
 
 28
 An employee ... has the burden of proving that he performed work for which he was not properly compensated....
 
 
 29
 When the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the [FLSA]. In such a situation we hold that the employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.
 
 
 30
 Id. at 687 (emphasis added). See also McLaughlin v. Ho Fat Seto, 850 F.2d 586, 589 (9th Cir.1988), cert. denied, 488 U.S. 1040 (1989).
 
 
 31
 In order to take advantage of this shifting burden of proof, the employee must demonstrate that the employer kept inadequate work records and that he has performed work for which he was not compensated. The jury found against the officers on both points: the Borough had not failed to keep accurate and adequate payroll records and none of the officers performed additional work for which they had not been paid.
 
 
 32
 The officers introduced evidence that until 1989, blank signed timesheets of the village officers were filled out by the supervising officers in Barrow to reflect 7.5 hours of work per day. Deputy Director of Public Safety John Marshall agreed that the Borough's timesheets did not accurately reflect hours worked each day by the village officers.
 
 
 33
 As previously noted, the officers worked in isolated villages, often with no regular means of transportation to the Borough headquarters at Barrow and without regular mail service. The Borough presented evidence that this procedure was instituted to ensure that the village officers were paid on time. The officers received pay stubs which reflected hours worked and could report any discrepancies, and were in phone contact with their supervisors about hours worked. The Borough also introduced evidence that by the fall of 1989, the villages acquired fax machines and the officers filled out and faxed certified timesheet to Barrow. The Borough introduced timesheets, overtime forms, records of overtime payments and paychecks which reflected hours reported by plaintiffs. In addition, the Borough presented evidence that the plaintiffs failed to report any unpaid overtime hours worked to their supervisors.
 
 
 34
 We conclude that the motion for partial summary judgment on the accuracy of the records was properly denied. Moreover, the verdict was not against the clear weight of the evidence, and the motion for new trial was properly denied as well.
 
 IV. The Sec. 207(k) plan
 
 35
 The officers argue that the Borough's Sec. 207(k) plan violates the FLSA "because of [the Borough's] illegal 'flextime' system and because of the undisputed failure to keep accurate records of hours worked." [Opening brief at 34.] As previously discussed, the flextime system did not violate FLSA, and there is evidence supporting the jury's verdict that the Borough kept accurate records.
 
 
 36
 The district court's denial of the officers' motions for directed verdict, JNOV, and new trial, all of which argued that the Sec. 207(k) was "invalid," are affirmed.
 
 V. The jury instructions
 
 37
 During trial, the officers objected to jury instructions C-47 and C-48, which provided that an employer "who knows or should have known that an employee is or was working overtime is obligated to pay overtime," and that the employee is required to prove that the employer "permitted, allowed or consented to [overtime] work performed." [ER-CR 325a.] The officers objected to the burden of proof requiring them to show that overtime was "permitted, allowed, or consented" because accurate records of hours worked were not kept.
 
 
 38
 The officers agreed to almost identical instructions and submitted them jointly to the court. [ER-CR 294, pp. 10-11.[6] ] The officers requested this instruction and may not now object to its use. See 999 v. C.I.T. Corp., 776 F.2d 866, 870 (9th Cir.1985) (district court properly denied request to withdraw previously requested instruction).
 
 VI. The motions in limine
 
 39
 Finally, the officers argue that the district court erroneously denied its various motions in limine urging the court to preclude the Borough from introducing its payroll records and evidence of its flextime system and policy requiring pre-authorization of overtime. The officers argue that Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, limits an employer's "rebuttal evidence" to accurate estimates of time worked, and that the Borough's records were not accurate.
 
 
 40
 As previously discussed, the Anderson burden-shifting does not come into play until the employee demonstrates that the employer's records are inaccurate or inadequate and that the employee has not been properly compensated for work done. Id. at 686-688. The jury found that the Borough did not fail to keep accurate records and that the plaintiffs did not work uncompensated hours.
 
 
 41
 There being no other argument that the motions in limine were improperly denied, the district court did not abuse its discretion in doing so.[7]
 
 
 42
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The denial of a motion for directed verdict under Fed.R.Civ.P. 50(a) and a motion for judgment notwithstanding the verdict under Fed.R.Civ.P. 50(b) are reviewed de novo. Erickson v. Pierce County, 960 F.2d 801, 804 (9th Cir.), cert. denied, 113 S.Ct. 815 (1992) (standard for reviewing JNOV); In re: Hawaii Federal Asbestos Cases, 960 F.2d 806, 816 (9th Cir.1992) (motions reviewed under same standard). A directed verdict is proper if the evidence permits only one reasonable conclusion as to the verdict, In re: Hawaii, 960 F.2d at 816, and a jury verdict is affirmed upon motion for JNOV if there is substantial evidence supporting the verdict. Landes Construction Co. v. Royal Bank of Canada, 833 F.2d 1365, 1370-71 (9th Cir.1987). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." Id. at 1371
 The denial of a motion for new trial under Fed.R.Civ.P. 59 is reviewed for an abuse of discretion. Landes, 833 F.2d at 1372. A new trial will not be granted unless the verdict is against the clear weight of the evidence. Id.
 
 
 [2]
 The denial of a motion for summary judgment is reviewed de novo. Federal Deposit Ins. Corp. v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992), cert. granted, 114 S.Ct. 543 (1993). This court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id
 
 
 [3]
 Prior to July, 1987, the officers were required to work 40 hours per week
 
 
 [4]
 Sec. 207(o) provides, in part:
 Employees of a public agency ... may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.
 
 
 [5]
 The testimony cited for this assertion does not support the claim that hours were "flexed" against a future pay period. [RT II 125 (Routen) (when he told his supervisors that he had worked more than eight hours that day, he was told "Take the next day off."); RT V 23-30 (Krogseng) (discussed situation where he had exceeded 75 hours in two-week period and had overtime approved for subsequent time; he agreed that he was never told that he had to work more than 75 hours without overtime pay); RT VI 240-42 (Real) (when worked long hours for two days, told to "flex it out" and take an extra day off); RT X 58-59 (Packer) (testified that officers would get overtime if they had run out of their time, but that if they hadn't exceeded their assigned number of hours, they would take care of calls "out of their flexible time".]
 
 
 [6]
 The proposed instructions stated: "The words 'suffer' or 'permit' mean work performed within the knowledge of the employer.... Where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer ... the employer's failure to pay for the overtime hours is not a violation of the FLSA"; "A part of the plaintiffs' burden of proof is to show that the defendant 'suffered' or allowed the plaintiffs to work uncompensated overtime."
 
 
 [7]
 The denial of a motion in limine is not reversible absent clear abuse of discretion. Jauregui v. City of Glendale, 852 F.2d 1128, 1132 (9th Cir.1988)