Leonard CHAPMAN,
Plaintiff–Appellant,

v.

WESTINGHOUSE ELECTRIC CORPORATION, a Pennsylvania corporation, Defendant–Appellee.

No. 89–35192.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 10, 1990.

Decided Aug. 14, 1990.

John X. Combo, Weinpel, Woolf, Just, Combo & Davis, Idaho Falls, Idaho, for plaintiff-appellant.

Joseph Charles Burgess, Anderson, Pike & Bush, Idaho Falls, Idaho, for defendant-appellee.

Before WALLACE, HALL and WIGGINS, Circuit Judges.

WALLACE, Circuit Judge:

Chapman appeals from the district court's summary judgment in favor of Westinghouse Electric Corporation (Westinghouse) on the ground of federal preemption. The district court had jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), and we have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We reverse.

I

Westinghouse, a private corporation, operated a government-owned nuclear reactor facility in Idaho. Chapman, a Navy enlisted man stationed at the reactor facility, was injured while on duty when a deck on which he was standing collapsed. Westinghouse designed and manufactured the deck for use at the reactor facility pursuant to a cost-plus-fixed-fee contract with the Department of Energy (DOE). The DOE–Westinghouse contract provided that the government would reimburse Westinghouse for all "[j]udgments and litigation expenses" incurred in connection with the contract.

Chapman sued Westinghouse in federal district court for personal injuries under Idaho state tort law, alleging diversity jurisdiction. Westinghouse successfully moved for summary judgment, arguing that, due to the reimbursement clause, Chapman's suit was in effect a suit against the government and as such was preempted by the Veterans' Benefits Act, 38 U.S.C. § 301 *et seq.* (Act).

"We review the order of summary judgment *de novo,* in the light most favorable to the nonmoving party, to determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986).

II

Westinghouse argues, and the district court held, that Chapman's state law tort suit is preempted by the Act. Preemption analysis "starts with the basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981). However, a state law will be preempted "where the law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 747, 101 S.Ct. at 2129, *quoting Hines v. Davidowitz,* 312

U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Preemption is particularly likely in so-called "areas ... of 'uniquely federal' interest." *Boyle v. United Technologies Co.*, 487 U.S. 500, 505, 108 S.Ct. 2510, 2514, 101 L.Ed.2d 442 (1988) (*Boyle*). In such circumstances, "[t]he conflict with federal policy need not be as sharp as that which must exist for ordinary pre-emption.... [T]he fact that the area in question is one of unique federal concern changes what would otherwise be a conflict that cannot produce preemption into one that can." *Id.* at 507–08, 108 S.Ct. at 2515–16 (emphasis omitted). Nevertheless, even in uniquely federal areas, "[d]isplacement will occur only where ... a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law,' or the application of state law would 'frustrate specific objectives' of federal legislation." *Id.* at 507, 108 S.Ct. at 2515 (citations omitted).

■ Westinghouse contends that Chapman's action impinges on an area of uniquely federal interest, and that allowing Chapman's suit would frustrate the objectives of the Act. Chapman does not dispute the first assertion: the presence of a uniquely federal interest. Such an interest arises from the government's potential liability under the indemnification clause should Chapman prevail against Westinghouse. *See id.* at 505–06, 108 S.Ct. at 2514–15 (finding a uniquely federal interest in "civil liabilities arising out of the performance of federal procurement contracts").

Similarly, Chapman does not contest Westinghouse's reading of the Act's policy objectives. The intent of the Act is to limit recovery against the government to payments made pursuant to the Act when compensated injury arises out of military service. "[T]he Veterans' Benefits Act serves a dual purpose: it not only provides a swift, efficient remedy for the injured serviceman, but it also clothes the Government in the protective mantle of the Act's limitation-of-liability provisions. Given the broad exposure of the Government, and the great variability in the potentially applica-ble tort law, the military compensation scheme provides an upper limit of liability for the Government as to service-connected injuries." *Stencel Aero Engineering Co. v. United States*, 431 U.S. 666, 673, 97 S.Ct. 2054, 2058–59, 52 L.Ed.2d 665 (1977) (*Stencel*) (internal quotation and citation omitted). Chapman concedes that he cannot sue the Government directly for his injuries. His benefits from that source must be under the Act. He vigorously contends, however, that even given the lesser degree of conflict required for preemption in areas of uniquely federal interest, the limitation of liability policy expressed in the Act does not pose a "significant conflict," *Boyle*, 487 U.S. at 507, 108 S.Ct. at 2515, with the operation of state law in Chapman's suit against Westinghouse.

■ The district court held that the outcome of this case was determined by *Stencel*. *Stencel* involved injuries sustained by an air force pilot when the ejection system of his aircraft failed during an emergency. The injured serviceman sought recovery from Stencel, a government subcontractor which had manufactured the ejection system. Stencel brought a third-party complaint for indemnification against the United States. The Court held that Stencel's claim was barred by the Act. 431 U.S. at 673, 97 S.Ct. at 2059. Requiring the government to indemnify third parties for injuries sustained by servicemen, said the Court, is not functionally distinct from requiring the government to compensate the injured party directly. As the latter course is specifically precluded by the Act, suits for indemnification constitute an impermissible end-run around the Act. "To permit [Stencel] to proceed here would be to judicially admit at the back door that which has been legislatively turned away at the front door." *Stencel*, 431 U.S. at 673, 97 S.Ct. at 2059 (quotation omitted).

*Stencel* does not directly control the case before us, which involves a suit by the injured party against the manufacturer rather than a suit by the manufacturer against the government. However, Westinghouse points out that by the terms of

the operating contract, the government is obligated to pay any judgment secured by Chapman against Westinghouse. Thus, Westinghouse argues, permitting Chapman's suit is necessarily to set in motion the end-run proscribed by *Stencel.*

We conclude that we are not required to apply *Stencel* to bar suits between private parties. There is nothing in *Stencel* which suggests that the Act preempted the injured serviceman's claim against the manufacturer. Indeed, the Court observed that an action by the injured serviceman against a private party other than Stencel was "still pending in the District Court." 431 U.S. at 669 n. 4, 97 S.Ct. at 2056 n. 4. We conclude that the *Stencel* inquiry is properly focused upon a possible subsequent claim—whether Westinghouse can receive indemnity from the government for any judgment awarded to Chapman—rather than upon Chapman's claim against Westinghouse.

Alternatively, Westinghouse argues that the *Stencel* rationale should be extended to this case because of the contractual provisions for indemnity. In *Stencel,* such express contractual provisions did not exist. 431 U.S. at 667 n. 2, 97 S.Ct. at 2056 n. 2. Concededly, the contractual provision raises an issue not present in *Stencel,* and arguably could serve to distinguish that case should Westinghouse seek indemnification. However, this appeal does not require us to decide whether the assertion by Westinghouse of the contractual provision for indemnity impermissibly conflicts with the objectives of the Act. It is Westinghouse, not Chapman, against whom *Stencel* preemption arguably operates. Thus, the rationale of *Stencel* does not help us in deciding this appeal.

This leads us to consider the impact of the contractual indemnification itself. It is not itself a product of a federal policy or an objective of federal legislation. The relevant portions of the Westinghouse contract are taken almost verbatim from 48 C.F.R. § 970.5204 (1988), which was in turn enacted pursuant to Executive Order No. 12344, 47 Fed.Reg. 4979 (Feb. 1, 1982), *reprinted in* 42 U.S.C. § 7158. The "almost verba-

tim" qualifier is critical, because neither the C.F.R. nor the Executive Order lists judgments as an item reimbursable by the government. *See* 48 C.F.R. § 970.5204–13 (1988) (specifically listing reimbursable costs); *see also* Exec. Order No. 12344, § 5(b). We can only surmise that the provision including judgments as an item of reimbursable costs was added by the contracting parties without specific statutory or regulatory direction. Westinghouse has alleged no such authority. Hence we are not required to decide whether a federal policy of reimbursing judgments against contractors would significantly conflict with and therefore preempt Chapman's state tort claim because no required "federal policy or interest," *Boyle,* 487 U.S. at 507, 108 S.Ct. at 2515, has been demonstrated.

Consequently, we are unable to identify a federal policy or interest which would be frustrated by Chapman's suit against Westinghouse. If Chapman is successful and if Westinghouse then seeks indemnification from the government, the policies underlying the Act may be implicated. However, even if such indemnification would frustrate the Act (a question on which we express no opinion), the preemption would, as in *Stencel,* operate against Westinghouse's claim and not against Chapman's. It is the indemnification, not the tort recovery, which arguably frustrates the Act; therefore, it should be the indemnification and not the tort recovery which is foreclosed.

### III

Westinghouse also contends that Chapman's suit is barred by the *Feres* doctrine, *see Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950) (*Feres*), and by the "military contractor defense" of *Boyle,* 487 U.S. at 512, 108 S.Ct. at 2518.

### A.

■ The *Feres* rule is that "members of the armed services [may] not sue the government for injuries that 'arise out of or are in the course of activity incident to

service.'" *Stauber v. Cline,* 837 F.2d 395, 397 (9th Cir.) (*Stauber*), *cert. denied,* 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988), *quoting Feres,* 340 U.S. at 146, 71 S.Ct. at 159. Since *Feres,* the doctrine has been extended to preclude state law claims against civilian government employees so long as the plaintiff is performing a military-service-related activity and is injured incident to that service. *Stauber,* 837 F.2d at 400; *United States v. Johnson,* 481 U.S. 681, 691 & n. 11, 107 S.Ct. 2063, 2069 & n. 11, 95 L.Ed.2d 648 (1987). We agree that Chapman's suit might well be foreclosed by the *Feres* doctrine if Westinghouse's association with the government in operating the reactor renders it a government employee. The question is, therefore, whether Westinghouse can be so characterized.

The Supreme Court has held in a different context that private contractors operating under conditions similar to those here are not government employees or instrumentalities. *United States v. New Mexico,* 455 U.S. 720, 738–40, 102 S.Ct. 1373, 1384–85, 71 L.Ed.2d 580 (1982) (finding private companies operating atomic research facilities under contract with the DOE not to be government employees entitled to immunity from state taxation). The Court emphasized that "[t]he congruence of professional interests between the contractors and the Federal Government is not complete" because "the contractors remained distinct entities pursuing private ends, and their actions remained commercial activities carried on for profit." *Id.* at 740, 739, 102 S.Ct. at 1386, 1385 (internal quotations and citation omitted).

This reasoning is helpful. Westinghouse's private profit objectives in operating under the contract establish it as an entity distinct from the government. Westinghouse points to no evidence suggesting the "congruence of professional interests" described in *United States v. New Mexico.*

Moreover, the Westinghouse contract expressly identifies Westinghouse as "the Contractor" and provides that "in carrying out the work under this Contract, the Contractor [Westinghouse] shall be responsible for the employment of all ... personnel. Persons employed by the Contractor shall be and remain employees of the Contractor, and shall not be deemed employees of DOE or the Government." Thus, Westinghouse is recognized as a distinct entity by the terms of its own contract. Under the circumstances, Westinghouse cannot be described as a government employee. As a result, the *Feres* doctrine, which applies only to suits against the government and its employees, poses no obstacle to Chapman's suit.

### B.

■ The military contractor defense is an outgrowth of the discretionary function exception to the Federal Tort Claims Act. *See Boyle,* 487 U.S. at 511–12, 108 S.Ct. at 2517–18. Unlike the *Feres* doctrine, it can bar suits against private parties operating under contract with the government. *Id.; Nielsen v. George Diamond Vogel Paint Co.,* 892 F.2d 1450, 1454 (9th Cir.1990). Under *Boyle,* "[l]iability for design defects in military equipment cannot be imposed [against private contractors], pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle,* 487 U.S. at 512, 108 S.Ct. at 2518.

Here we need look no further than the first step of the *Boyle* test. There is no evidence that the government provided or approved precise specifications as to the design or manufacture of the deck which caused Chapman's injury. An example provided in *Boyle* is illustrative.

If, for example, the United States contracts for the purchase and installation of an air conditioning unit, specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary.... No one

suggests that state law would generally be pre-empted in this context. *Boyle*, 487 U.S. at 509, 108 S.Ct. at 2516.

Our case is similar. The deck was built to no more precise government specifications than was the hypothetical air conditioning unit in *Boyle*. Westinghouse points to no special circumstances distinguishing this case from the hypothetical one in which the Supreme Court has indicated that state law liability clearly would not be preempted. Thus, we hold that the government did not provide sufficiently precise oversight and direction of the design and manufacture of the deck to permit Westinghouse to invoke the military contractor defense.

As an offshoot of its military contractor defense argument, Westinghouse asserts that its position is assisted by *In re Consolidated United States Atmospheric Testing Litigation*, 820 F.2d 982 (9th Cir.1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988). That case, it is argued, shows that Westinghouse should be immune from state tort claims such as Chapman's. *Atmospheric Testing* did hold that a similar suit against a private contractor involved in nuclear arms research was barred. However, that decision rests upon a statute, 42 U.S.C. § 2212, which specifically provides for private contractor immunity for atmospheric testing of nuclear weapons. Section 2212 is plainly not applicable here to benefit Westinghouse. Absent a specific statute, immunity in this context can only be provided by the military contractor defense, which turns upon the *Boyle* test applied above. *Atmospheric Testing* is therefore wholly irrelevant to the application of the *Boyle* test.

Chapman's state law claim against Westinghouse is not preempted by the policies underlying the Act, nor is it precluded by the doctrines derived from *Feres* and *Boyle*. Thus, the district court erred in granting summary judgment to Westinghouse.

REVERSED.