Terrence L. BUTLER, Plaintiff–
Appellant,

v.

INGALLS SHIPBUILDING, INC.,
Defendant–Appellee.

No. 95–55224.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 10, 1996.

Decided July 10, 1996.

Preston Easley and Jeffrey Winter, Law Offices of Preston Easley, San Pedro, California, for plaintiff-appellant.

Kathleen McCormick, Royce, Grimm, Vranjes, McCormick & Graham, San Diego, California, for defendant-appellee.

Before: FLOYD R. GIBSON,[1] JOHN T. NOONAN, Jr., and THOMPSON, Circuit Judges.

---

1. The Honorable Floyd R. Gibson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

FLOYD R. GIBSON, Circuit Judge:

Terrence L. Butler appeals the district court's grant of summary judgment against him. We affirm in part and reverse and remand in part.

## I. BACKGROUND

On October 9, 1992, United States Navy Boatswain's Mate First Class Terrence L. Butler was injured when an accommodation ladder on which he was standing fell into the water. An accommodation ladder is an adjustable stairway attached to the side of a vessel that can be lowered alongside the hull. The apparatus includes an adjustable platform at the bottom, a permanently mounted chainhoist on the hull directly above the end of the platform, and a lifting padeye (a small aluminum loop) on the end of the platform. The accommodation ladder was attached to the U.S.S. Essex, the second in a series of LHD class vessels. These vessels, which resemble small aircraft carriers, are used to carry troops, landing craft, attack helicopters, and harrier jets.

Butler and three other crewmen were attempting to raise and stow the accommodation ladder, which had been lowered over the side of the vessel, when the accident occurred. Instead of properly rigging the accommodation ladder by using a chain fall or a chain sling to attach the lifting brackets on the accommodation ladder, the crewmen attached the winch to a steel ring attached to the padeye on the lower portion of the ladder. The steel ring and the padeye were designed to attach to the side of the vessel in order to prevent the ladder from swinging away from the side of the vessel. When the ladder failed to fully raise, the crewmen realized the winch was hooked to the wrong loop. Instead of fully lowering the accommodation ladder and re-rigging it properly, the four crewmen climbed out onto the ladder and attempted to re-rig it. The weight from the ladder, the platform, and the four men caused the padeye, which was intended to be used to adjust the platform alone, to break,

dumping the entire apparatus and the four crewmen into the water. Butler was seriously injured as a result.

On July 13, 1993, Butler filed suit against Ingalls Shipbuilding, Inc. (Ingalls), the contractor that manufactured the accommodation ladder, claiming failure to warn, strict products liability and negligence in design and manufacture. On August 8, 1994, Ingalls moved for summary judgment based on the government contractor's defense. On August 11, the district court granted the motion with respect to all allegations regarding the design of the ladder, reserving the issue of potential manufacturing defects not inherent in the design. In response to Ingalls' motion for reconsideration, the district court subsequently granted Ingalls' motion in full, concluding that the alleged manufacturing defects alleged by Butler regarding the strength and durability of the components were inherent in the product approved by the Navy and therefore barred by the government contractor's defense. Butler appeals.

## II. DISCUSSION

■ Under *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), liability for design defects in military equipment cannot be imposed upon a private government contractor when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier, but not to the United States." *Id.* at 512, 108 S.Ct. at 2518. This defense arises from the "significant conflict" between state law that would hold government contractors liable for design defects in military equipment and the federal interest in immunizing "the trade-off between greater safety and greater combat effectiveness" through the discretionary function exception to the Federal Tort Claims Act. *Id.* at 511–12, 108 S.Ct. at 2518–19. The underlying rational is one of economics: "It makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production." *Id.* at

512, 108 S.Ct. at 2518. The first two elements of the defense are intended to insure that it is indeed a discretionary decision on the part of the government that is being immunized. *Id.* The third is intended to ensure that the contractor has fully conveyed all information necessary to allow the government to make a fully informed decision. *Id.* at 512–13, 108 S.Ct. at 2518–19.

■ Butler contends that the government contractor's defense is inapplicable to his complaint because an accommodation ladder does not qualify as military equipment. Butler also challenges the first element of the defense, claiming that the Government neither provided Ingalls with nor approved "reasonably precise specifications." Finally, Butler argues that the government contractor's defense is inapplicable to his complaint because it involves a failure to warn. We review the district court's grant of summary judgment de novo, in the light most favorable to the nonmoving party in order to determine whether there are any genuine issues of material fact and whether the district court correctly applied the law. *Chapman v. Westinghouse Elec. Corp.*, 911 F.2d 267, 268 (9th Cir.1990).

### A. Military Equipment

■ As a preliminary matter, we have little difficulty characterizing the accommodation ladder in issue as "military equipment." In *McKay v. Rockwell Int'l Corp.*, 704 F.2d 444, 451 (9th Cir.1983), *cert. denied*, 464 U.S. 1043, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984), this Court observed that the line lay "somewhere between an ordinary consumer product purchased by the armed forces—a can of beans, for example—and the escape system of a Navy RA–5C reconnaissance aircraft." We believe the accommodation ladder falls within the term's meaning while the can of beans does not. It is used by sailors, marines, or other naval personnel to access other ships, docks, or piers.

This case is a far cry from the situation in *Nielsen v. George Diamond Vogel Paint Co.*, 892 F.2d 1450, 1453 (9th Cir.1990), in which the manufacturer readily conceded that its paint was not designed for any special military purpose, or *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 812 (9th Cir. 1992), in which the manufacturer conceded

that the asbestos at issue was exactly the same product sold in significant quantities to private industry. The accommodation ladder in this case was specially ordered and designed with the special military needs of the LHD class vessels in mind. Consequently, we are comfortable categorizing this accommodation ladder as military equipment rather than an ordinary consumer good.

## B. Approval of Reasonably Precise Specifications

■ Butler next argues that the Navy did not provide Ingalls with "reasonably precise specifications" nor "approved" them within the meaning of *Boyle's* first requirement. Butler relies on *Trevino v. General Dynamics Corp.*, 865 F.2d 1474 (5th Cir.), *cert. denied*, 493 U.S. 935, 110 S.Ct. 327, 107 L.Ed.2d 317 (1989). In that case, the Fifth Circuit held that the Government's "rubber stamp" approval of a contractor's design failed to meet *Boyle's* first requirement. "When the Government merely accepts, without any substantive review or evaluation, decisions made by a government contractor, then the contractor, not the government, is exercising discretion." *Id.* at 1480; *see also McKay*, 704 F.2d at 450 ("When only minimal or very general requirements are set for the contractor by the United States the rule is inapplicable. The situation is different where the United States reviewed and approved a detailed set of specifications.").

Close review of the record, however, shows that the Navy both provided Ingalls with extremely precise specifications and painstakingly reviewed Ingalls' conformance therewith. Pursuant to its contract with Ingalls, the Navy required it to construct two accommodation ladders for the Essex (LHD–2) according to the following specifications:

The ladders shall be feathering-tread types in accordance with drawing, NavShips No. 804–2255402 and lower platforms, boat fenders and shell bumpers shall be in accordance with drawing, NavShips No. 804–2255405. Accessories shall be in accordance with drawings NavShips Nos. 804–2255400 and 804–2255408. The upper platform shall be the rotating type to permit use of the ladder as a brow and be built into the support structure. Stowage of the ladder shall be accomplished by bringing the fully assembled ladder to a horizontal position and securing it to a permanently mounted structure. The structure shall provide access to all ladder components and operating locations and be fitted with handrails. Hoisting of the ladder shall be accomplished with 2–ton portable electric chain hoists. One 2–ton manual chain hoist shall be provided for backup. Details of the stowage and handling system shall be in general accordance with drawings, NavShips Nos. 506–4730067, 603–4730068, 603–4730069, 603–4730070 and 302SK48822189.

Based on these specifications, Ingalls submitted a series of drawings depicting the accommodation ladders to the Navy, which accepted them. Ingalls then constructed the accommodation ladders, installed them, and tested them for quality assurance, weight-holding, rigging and un-rigging, and operation purposes.

On July 10, 1992, the Navy accepted the accommodation ladders as complete, subject to certain specified items requiring rework or completion. After commissioning the vessel in San Diego, the Navy had Ingalls remove the accommodation ladders in order to allow the vessel to travel through the Panama Canal. Upon exiting the canal, Ingalls reinstalled the ladders and retested them for weight and operations. The Navy approved the reinstallment and re-testing. Specifically, illustrations 47 and 48 of detail 31–A of drawings, NavShips No. 804–2255405 provide extremely detailed representations of the Navy's required design for the padeye and link in question. In addition, page one of drawings, NavShips No. 804–2255405 provides that the specified materials to be used in the design of the link and padeye are "mandatory."

In short, the Navy was involved with the design of the accommodation ladder in general and the padeye and link in particular from the outset. This control continued through the entirety of the development process including testing and installation. This is precisely the type of "back and forth dialogue culminating in approval," and "continuous exchange between the contractor and the government" required to satisfy *Boyle's* first condition in cases such as *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1154–56 (6th Cir.

1995) and *Kleemann v. McDonnell Douglas Corp.*, 890 F.2d 698, 702–03 (4th Cir.1989). As such, we conclude that the Navy approved reasonably precise specifications. *Stout v. Borg–Warner Corp.*, 933 F.2d 331, 336 (5th Cir.1991) (thorough review and incorporation of contractor's design constituted approval of reasonably precise specifications); *Maguire v. Hughes Aircraft Corp.*, 912 F.2d 67, 72 (3rd. Cir.1990) (Army's approved design requiring particular type of ball bearing that later malfunctioned constituted approval of reasonably precise expectations).

### C. Failure to Warn

 Butler also argues that the district court erred in dismissing his failure to warn claim. We agree. Under California law, a manufacturer has a duty to warn of a danger when the manufacturer has knowledge of the danger or has reason to know of it and has no reason to know that those who use the product will realize its dangerous condition. *Stevens v. Parke, Davis & Co.*, 9 Cal.3d 51, 64–65, 107 Cal.Rptr. 45, 507 P.2d 653 (1973). Whereas the government contractor's defense may be used to trump a design defect claim by proving that the government, not the contractor, is responsible for the defective design, that defense is inapplicable to a failure to warn claim in the absence of evidence that in making its decision whether to provide a warning against use of the padeye to lift the platform, or some other suitable warning, Ingalls was "acting in compliance with 'reasonably precise specifications' imposed on [it] by the United States." *In re Federal Asbestos Cases*, 960 F.2d 806, 813 (9th Cir.1992), quoting *Boyle*, 487 U.S. at 512, 108 S.Ct. at 2518; *In re Joint E. & S. Dist. New York Asbestos Litig.*, 897 F.2d 626, 629–32 (2d Cir.1990). As the second Circuit stated in *Joint E. & S. Dist.*,

> In a failure-to-warn action, where no conflict exists between requirements imposed under a federal contract and a state law duty to warn, regardless of any conflict which may exist between the contract and state law design requirements, *Boyle* commands that we defer to the operation of state law.

*Id.* at 631.

 In ruling on the motion for summary judgment, the district court did not consider the failure to warn requirements of state law independent of the *Boyle* defense, nor did it analyze whether the specifications of Ingalls' contract with the Navy conflicted with Ingalls' duty to warn under state law. Remand to the district court is appropriate in order to enable it to consider these matters. If the record is bereft of any evidence of a conflict between the specifications in Ingalls' contract with the Navy and state law requirements of a duty to warn, the government contractor defense is inapplicable to Butler's failure to warn claim.

### III. CONCLUSION

We affirm the judgment of the district court with respect to Butler's design defect claim. We reverse the judgment of the district court with respect to Butler's failure to warn claim and remand it to the district court for further proceedings.