SCHWARZER, Senior District Judge:
In this case we decide whether the evidence establishes as a matter of law that the government “approved reasonably precise specifications” entitling a government contractor to immunity under the military contractor defense.
FACTUAL AND PROCEDURAL BACKGROUND
This is a wrongful death action brought by plaintiffs Dorothy Snell and other members of the families of three individuals (collectively “Snell”) who perished in the crash of a Marine Corps UH-1N helicopter. Named as defendants are Bell Helicopter Textron Inc. (“Bell”), the manufacturer of the helicopter, and the manufacturers of certain component parts. The complaint alleges defects in the design and manufacture of the drive shaft and component parts and asserts claims for strict product liability, negligence and breach of warranty. Bell moved for summary judgment based on the military contractor defense. After further discovery, the district court granted the motion on all claims. Following dismissal of the other defendants, the court entered judgment for Bell and Snell *-838 appealed. The district court had subject matter jurisdiction under 28 U.S.C. § 1332, and we have appellate jurisdiction under 28 U.S.C. § 1291. Having reviewed the summary judgment de novo, we reverse and remand.
DISCUSSION
I. THE MILITARY CONTRACTOR DEFENSE
The military contractor defense[1] is an affirmative defense; Bell has the burden of establishing it. See McKay v. Rockwell Int’l Corp., 704 F.2d 444, 453 (9th Cir.1988), cert. denied, 464 U.S. 1043, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984). The district court held that Bell “has submitted sufficient evidence that it is entitled to the defense.” Because the matter came before the court on motion for summary judgment, however, the issue was not whether Bell had produced sufficient evidence to establish the defense but whether it was entitled to judgment as a matter of law, i.e., whether no reasonable jury could fail to find that the defense had been established. See Boyle v. United Technologies Corp., 487 U.S. 500, 514, 108 S.Ct. 2510, 2519-20, 101 L.Ed.2d 442 (1988) (“[Wjhether the facts establish the conditions for the defense is a question for the jury.”). Thus, we must review the record to determine whether, resolving disputed facts in favor of the parties opposing the motion, it would permit a reasonable jury to reject the defense. Because we conclude that a reasonable jury could find against Bell on the first element of the military contractor defense, we reverse.[2]
The. Supreme Court in Boyle stated the elements of the military contractor defense as follows:
Liability for design defects in military equipment cannot be imposed, pursuant to state law, when
(1) the United States approved reasonably precise specifications;
(2) the equipment conformed to those specifications; and
(3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.
Id. at 512, 108 S.Ct. at 2518 (internal formatting added). The district court ruled in favor of Bell on all three elements.
The defense is intended to implement and protect the discretionary function exception under the Federal Tort Claims Act, 28 U.S.C. § 2680(a). As the Court said in Boyle, “[i]t makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production.” 487 U.S. at 512, 108 S.Ct. at 2518.
That rationale, however, is based not on a simple economic concern for government procurement costs, but on the government’s need to exercise judgment about the appropriate design of equipment for which it contracts. As the Court observed:
[T]he selection of the appropriate design for military equipment to be used by our Armed Forces is assuredly a discretionary function ... [which] often involves not merely engineering analysis but judgment as to the balancing of many technical, military, and even social considerations, including specifically the trade-off between greater safety and greater combat effectiveness- [P]ermitting “second-guessing” of these judgments through state tort suits against contractors would produce the same effect sought to be avoided by the FTCA exemption.
Id. at 511,108 S.Ct. at 2518 (internal citation omitted). The purpose of the. requirement *-837 that the government approve reasonably precise specifications is to ensure that the defense serves the policy underlying the discretionary function — as the Court put it, to “assure that the design feature in question was considered by a Government officer, and not merely by the contractor itself.” Id. at 512, 108 S.Ct. at 2518; see also Butler v. Ingalls Shipbuilding, Inc., 89 F.3d 582, 584 (9th Cir.1996).
II. THE DESIGN DEFECT CLAIM
Snell contends that the cause of the crash was the failure of the main drive shaft and that the failure was the result of a design defect. The drive shaft transmits power from the engines to the transmission through a coupling. The transmission is suspended on vibration isolating mounts located on pylons on the fuselage. It is connected to the main rotors which provide lift for the helicopter. During flight, the transmission is pulled and pushed against the mounts and the drive shaft. If the mounts do not support the drive shaft in proper alignment, the resulting friction (from pressure on the gear teeth at the coupling connecting the drive shaft to the transmission) will burn off the lubricant. This produces overheating which causes the gear teeth in the coupling to shear off, resulting in a loss of power. Snell alleges design and manufacturing defects in the transmission mounts and the drive shaft coupling which caused misalignment of the drive shaft.
The district court rested its summary judgment ruling on the conclusion that “[t]he government was significantly involved in and approved very precise specifications for the UH-1N helicopter.” It found that
[t]he initial draft of the specifications was produced by [Bell]_ The precise design and all changes to the Detail Specification were established by government personnel at [lengthy] specification conferences .... [where] each paragraph of the Detail Specification was thoroughly dis-cussed_ Each specification was examined line by line by government specialists.... [After approval] [t]he Detail Specification then became part of the contract and controlled the manufacture of the helicopter.... The Detail Specifications [sic] were all encompassing.... [Bell] submitted all its drawings to the government for examination, review and approval.... Each drawing was signed by a representative of the government ... indicating] approval.
On the basis of that evidence, the court found “that the government approve[d] reasonably precise specifications.”
While the district court found, and the summary judgment record produced by Bell establishes that the government was significantly involved in and approved specifications for the design of the entire helicopter, the court’s ruling did not address, as Boyle requires, whether “the design feature in question [i.e., the drive shaft and its components] was considered by a Government officer, and not merely by [Bell] itself.” 487 U.S. at 512, 108 S.Ct. at 2518. Where government “ap-prov[al] of reasonably precise specifications” has been found as a matter of law, the evidence established exercise of judgment by the government in the design of the particular feature at issue. See Butler, 89 F.3d at 585 (Navy furnished precise specifications for construction and functioning of the shipboard “accommodation ladder in general and the [allegedly defective] padeye and link in particular” and controlled the entire development process, including testing and installation); Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 998-99 (7th Cir.1996) (Marine Corps was actively involved in the design process of the MK-48 support vehicle and gave substantive input on the configuration of the fuel and exhaust system alleged to have been defectively designed), petition for cert. filed, 65 U.S.L.W. 3468 (Dec. 23, 1996) (96-1007); Tate v. Boeing Helicopters, 55 F.3d 1150, 1154-55 (6th Cir.1995) (Army initially developed and actively participated in the lengthy and intensive design process of helicopter tandem hooks which were alleged to be defective); Maguire v. Hughes Aircraft Corp., 912 F.2d 67, 71 (3d Cir.1990) (Army specifically approved and required in its contract the installation of the allegedly defective replacement ball bearing in a helicopter engine);, see also Kleemann v. McDonnell Douglas Corp., 890 F.2d 698, 701 (4th Cir. 1989) (design details of “main landing gear at issue” reflected balancing of military and *-836 technological factors), cert. denied, 495 U.S. 953, 110 S.Ct. 2219, 109 L.Ed.2d 545 (1990); Harduvel v. General Dynamics Corp., 878 F.2d 1311, 1318 (11th Cir.1989) (electrical system failure caused by wire chafing inherent in design of “all-electric fighter,” known and accepted by Air Force), cert. denied, 494 U.S. 1030, 110 S.Ct. 1479, 108 L.Ed.2d 615 (1990); Perez v. Lockheed Corp. (In re Air Disaster at Ramstein Air Base, Germany), 81 F.3d 570, 575 (5th Cir.) (modification of engine pylons at issue made pursuant to Engineering Change Proposal requested and agreed to by Air Force), modified on other grounds, 88 F.3d 340 (1996).
On the record before us, the Detail Specification for the helicopter left the design and placement of the drive shaft and its components to Bell. It provided:
The transmission shall be mounted on a suitable vibration isolator. A lift link shall be attached to the structure to cany rotor thrust loads.
Detail Specification, ¶ 3.15.1.3.
A transmission input drive installation shall be provided. This installation shall consist of a shaft assembly to carry rotor thrust loads.
Detail Specification, ¶ 3.15.1.7.1. The Detail Specification would not support application of the defense as a matter of law. “When only minimal or very general requirements are set for the contractor by the United States the [military contractor defense] is inapplicable.” Butler, 89 F.3d at 585 (quoting McKay, 704 F.2d at 450).
The record further shows that Bell then prepared and submitted the drawings for the entire helicopter to the government for examination, review and approval to ensure that they met the Detail Specification. As the district court found, this process was conducted by government engineers with expertise to ensure that each drawing was correct and met the Detail Specification. Each drawing was signed by a government representative to indicate approval. But that evidence does not establish as a matter of law that the government exercised its discretion with respect to the drive shaft and its components. On the contrary, testimony of the Bell official in charge of dealing with the military about the design of the helicopter, who attended all of the design meetings, was that there were no discussions with the government about the design of the critical isolation mounts. His subsequent declaration to the contrary does not eliminate the issue of fact raised by his earlier testimony.
Government approval “requires more than a rubber stamp.” Trevino v. General Dynamics Corp., 865 F.2d 1474, 1480 (5th Cir.), cert. denied, 493 U.S. 935, 110 S.Ct. 327, 107 L.Ed.2d 817 (1989); accord Butler, 89 F.3d at 585. “The mere signature of a government employee on the ‘approval line’ of a contractor’s working drawings, without more, does not establish the government contractor defense.” Trevino, 865 F.2d at 1480 (rejecting the defense, though the Navy had approved the design specifications for the installation of a diving hangar on a submarine, because the design and installation of the safety features at issue had been left by the Navy to the contractor’s discretion).
On this record a trier of fact could find that the government did not exercise judgment with respect to the design feature in question, the drive shaft and its components. “If the government contractor exercised the actual discretion over the defective feature of the design, then the contractor will not escape liability via the government contractor defense — the government’s rubber stamp on the design drawings notwithstanding.” Trevino, 865 F.2d at 1480.
We conclude that the record before us does not establish as a matter of law that the government “approved reasonably precise specifications” and that issues of fact remain on the application of the first prong of the military contractor defense to the design claim.
The district court found that Bell met the second prong of the Boyle defense, conformity with the specifications. Snell argues on appeal that such a finding is precluded, even if the government signed off on the government acquisition form, because of latent defects in the helicopter. We do not reach this issue, for in the absence of the requisite “reasonably precise specifications,” the ques *-835 tion of whether conformity was established as a matter of law is necessarily moot.
With respect to the third prong, failure to warn of dangers in the use of the helicopter known to Bell but not to the government, the district court found that the declarations of Bell’s personnel, which stated that they conveyed all dangers known to them before delivery of the helicopter, were “sufficient evidence to meet this prong.” In light of our disposition of the first and second prongs of the defense, we see no purpose in addressing this issue and leave it to be resolved in further proceedings by the district court as may be appropriate in light of this opinion.
III. THE MANUFACTURING DEFECT CLAIM
Snell alleged that the drive shaft failure resulted from several manufacturing defects, to wit, the use of various defective and nonconforming components. The district court found that virtually every part of the helicopter was addressed in a government-approved plan and each replacement part supplied by Bell was certified to comply with the specifications.
We agree with the district court that the military contractor defense can apply to manufacturing defects. Although Boyle’s holding concerned liability for design defect claims, the Court’s reasoning encompasses claims alleging manufacturing defects. As the court observed in Bailey v. McDonnell Douglas Corp., 989 F.2d 794, 801 (5th Cir.1993), “whether the defense will apply cannot be determined by the label attached to the claim. Strict adherence to the three Boyle conditions specifically tailored for the purpose will ensure that the defense is limited to appropriate claims.” Thus, whether the defense applies to a claim based on an alleged manufacturing defect depends on whether the particular product at issue was to be manufactured in conformity with reasonably precise specifications approved by the government. Id. at 801-02; see also Harduvel, 878 F.2d at 1321 (“To say that a product failed to conform to specifications is just another way of saying that it was defectively manufactured.”). In the absence of proof of reasonably precise specifications approved by the government, the premise of the defense — the exercise of discretion by the government — is lacking.[3]
Because the record does not permit finding as a matter of law that the government approved reasonably precise specifications for the drive shaft and its components, it necessarily precludes application of the military contractor defense as a matter of law to Snell’s manufacturing defect claim.
IV. FAILURE-TO-WARN CLAIM
The complaint, read broadly, may also allege a claim for failure to warn. The district court did not address this claim specifically although it granted judgment for Bell on all claims. It did find, in connection with the third prong of the military contractor defense, that Bell withheld no information about dangerous aspects of the helicopter at the time of delivery. This claim, however, may not be so limited; Snell appears to assert a common law duty on the part of Bell to inform the government of defects of which it learned after delivery. We express no view on the merits of this claim. We note only that as for the application of the military contractor defense against it, Bell would have to show that “in making its decision whether to provide a warning ... [it] was acting in compliance with reasonably precise specifications imposed on it by the United States.” Butler, 89 F.3d at 586 (internal quotation marks omitted). The issue here is whether Bell’s obligations under its contract with the government were in conflict with its performance of whatever duty state law might have imposed on it. See id. Bell has shown neither that “the government considered the appropriate warnings, if any, that should accompany the product,” Tate, 55 F.3d at 1156, nor that it “approved reasonably precise specifications” constraining Bell’s ability to comply with whatever duty to warn it may have had. See Butler, 89 F.3d at 586. Summary judgment on this claim was therefore inappropriate.
*-834 CONCLUSION
We do not decide here whether Bell may be entitled to the military contractor defense. We decide only that on the record before us the defense has not been established as a matter of law, i.e,, that a reasonable jury would not be required to find that the three prongs of the defense had been proved by a preponderance of the evidence with respect to each of Snell’s claims. We therefore REVERSE the judgment and REMAND for further proceedings consistent with this opinion.
REVERSED and REMANDED.

. The defense is also known as the "government contractor defense.” In the Ninth Circuit, however, it is only available to contractors who design and manufacture military equipment. See Nielsen v. George Diamond Vogel Paint Co., 892 F.2d 1450 (9th Cir.1990).

. Because we reverse the order granting summary judgment, there is no need to reach Snell’s additional contention that the district court abused its discretion by considering plaintiffs' motion for reconsideration as a motion for relief from judgment under Fed.R.Civ.P.. 60(b), rather than a motion to alter or amend the judgment under Fed.R.Civ.P. 59(e).

. Although conformity with government-approved specifications is likely to be the paradigm for the defense applied to manufacturing defect claims, the defense might also be supported by evidence that the contractor, in selecting a particular component or employing a particular process, was following specific directions of a government officer reflecting the latter's exercise of judgment.