**Mason HODGES, Plaintiff-counter-claimant,**

**v.**

**SUMMER FUN RENTALS, INC., In the matter of the Complaint of Summer Fun Rentals, Inc., as owner of the two SeaDoo Personal Watercraft bearing HIN #'s ZZNB1472C797 and ZZNA07426495, for Exoneration from or Limitation of Liability, Defendant-cross-defendant-Appellee,**

**Matthew M. McAlpine, Defendant-cross-defendant-Appellant,**

**Lynne Koehler, husband, and the marital community composed thereof as: Sun Down Marine/Auto, Inc., a Washington corporation, and Columbia Park Marina; Beverly Koehler, wife, and the marital community composed thereof as: Sun Down Marine/Auto, Inc., a Washington corporation, and Columbia Park Marina; Sun Down Marine/Auto, Inc., a Washington corporation; Columbia Park Marina, Defendants-counter-claimants-Appellees,**

Mason Hodges, Plaintiff-counter-claimant-Appellant,

v.

Summer Fun Rentals, Inc., In the matter of the Complaint of Summer Fun Rentals, Inc., as owner of the two SeaDoo Personal Watercraft bearing HIN #'s ZZNB1472C797 and ZZNA07426495, for Exoneration from or Limitation of Liability, Defendant-cross-defendant-Appellee,

Lynne Koehler, husband, and the marital community composed thereof as: Sun Down Marine/Auto, Inc., a Washington corporation, and Columbia Park Marina; Beverly Koehler, wife, and the marital community composed thereof as: Sun Down Marine/Auto, Inc., a Washington corporation, and Columbia Park Marina; Sun Down Marine/Auto, Inc., a Washington corporation; Columbia Park Marina, Defendants-counter-claimants-Appellees,

and

Matthew M. McAlpine, Defendant-cross-defendant.

Nos. 04–35775, 04–35777.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 17, 2006.*

Filed Oct. 12, 2006.

_____

C. Steven Fury, Esq., Fury & Baily, Seattle, WA, for Plaintiff-counter-claimant.

Guite G., Steven Defoe Law Office, Kennewick, WA, Cheryl Rani Guttenberg Adamson, Esq., Raekes Rettig Osborne & Forgette, Kennewick, WA, for Defendant-cross-defendant-Appellee.

Michael A. Barcott, Esq., Nina M. Mitchell, Esq., Holmes Weddle & Barcott First Interstate Center, Seattle, WA, for Defendant-cross-defendant.

August C. Cifelli, Esq., Lee, Smart, Cook, Martin & Patterson, Seattle, WA,

_____

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

for Defendants-counter-claimants-Appellees.

Before: REAVLEY **, PREGERSON, and CALLAHAN, Circuit Judges.

### MEMORANDUM ***

In this maritime negligent failure to warn case, the outcome determinative issue is whether a rental agency in the business of renting personal watercraft (PWC) has a duty to warn the user, or lessee, that "wake jumping"[1] and operating a PWC within 200 feet of another vessel is dangerous. The district court held that there was no duty to warn because those dangers are open and obvious. We agree and therefore affirm the judgment of the district court.

The parties agree that a rental agency has no duty to warn of open and obvious dangers. However, the parties dispute whether that issue is one of law or of fact. We have held that "the question of whether a risk is obvious or generally known is one of fact and thus should be decided by a trier of fact when reasonable minds may differ." *Maneely v. General Motors Corp.,* 108 F.3d 1176, 1179 (9th Cir.1997). Accordingly, when a defendant claims it owes no duty to warn because of the open and obvious nature of the danger, the court is required to make a threshold determination as to whether reasonable minds can differ with respect to the open and obvious nature of the danger. If reasonable minds cannot differ as to the obviousness of danger, the court decides the question as matter of law, but if reasonable minds can differ, obviousness of risk is a jury question.

The dangers of wake jumping include the danger that the rider may fall off the PWC or may collide with another vessel. We conclude that reasonable minds could not differ with respect to whether it is open and obvious that (1) one might fall off a PWC while, during, or after jumping a wake or (2) collide with another vessel while, during, or after jumping a wake. These dangers are obvious to any person of ordinary intelligence. Further, the dangers of operating a PWC too closely to another vessel is intuitive and obvious.

We need not reach the proximate cause issue because there is no duty to give this particular warning. We do not see any error regarding the admissibility of Captains Greiner and Richard's testimony as they did no more than offer their conclusion that dangers of wake jumping are not open and obvious.

The dissent sees that different wakes to be jumped require a warning to the jet ski user. We think the care required in the presence of other craft and heavy waves is obvious. To hold otherwise we might as well require the car renter to tell the user to watch for traffic and slow the speed

---

** The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. "Wake jumping" is not a well-defined term. The district court stated, "it is clear that wake-jumping referred to in this case involved crossing a wake at such a speed that the PWC will become airborne, that is, it will leave the surface of the water as it crosses the wake and will come back into contact with the water somewhere on the other side of the wake, depending on the speed and height of the wake." Neither party disputes this definition and we adopt it.

when near other vehicles, or to require the lessor of a building to tell the lessee to walk slowly going down stairs and to keep a safe distance from others.

**AFFIRMED.**

PREGERSON, Circuit Judge, dissenting:

The crucial issue before us is whether, in the circumstances of this case, reasonable minds can differ that wake jumping is openly and obviously dangerous. Because the obviousness of the dangers of wake jumping depends on the factual circumstances and because this case is rife with disputed issues of material fact, summary judgment was not appropriate.

On July 31, 1999, two eighteen-year-old friends, Matthew McAlpine and Mason Hodges, rented Sea Doo personal watercrafts [2] ("PWC") from Summer Fun Rentals ("Summer Fun") on the Columbia River. It is undisputed that neither Hodges nor McAlpine had ever used a PWC. Summer Fun's employee gave them brief instruction relating to the "kill switch" feature and the location of the throttle. Summer Fun also told them to stay out of shallow water and to "stay below 5 miles an hour until they hit the buoy ... [and then to] 'go ahead and do whatever [they] wanted to do.'" Summer Fun did not tell Hodges and McAlpine that wake jumping can be dangerous.[3] Hodges and McAlpine thought wake jumping was permitted because they "saw others doing it" and because McAlpine "had previously seen people jumping wakes while operating

personal watercraft on television." Hodges and McAlpine rode the PWC without incident for about fifty minutes, during which time they executed spinning and wake jumping moves. Up to this point, the facts are clear.

McAlpine then saw a boat described as a "pleasure craft" coming towards them. He and Hodges decided to pass the boat on opposite sides so that they could jump its wake. We do not know how fast the pleasure craft was going or how large a wake it created. It appears that, in the act of jumping the wake, Hodges fell off of his PWC in McAlpine's line of travel, resulting in a crash. Hodges was severely injured, resulting in the amputation of his leg below the knee. Hodges filed this negligence action against Summer Fun, alleging that Summer Fun had a duty to warn of the hazards of wake jumping.

As the district court observed, "[t]he facts in this case are disputed." The district court noted that Hodges "cannot remember the exact details of the accident." McAlpine apparently could not see how Hodges ended up in his line of travel and did not see Hodges before hitting him. We do not know how big the wake was, the size of the boat that created the wake, the amount of boat traffic on the Columbia River, the wind conditions, the water current conditions, and any other facts that might have contributed to the accident. The truth is, we know very little about what happened that day.

Hodges tried to inform the court's understanding of the accident by presenting

---

2. A Sea Doo is similar to a wave runner or a jet ski.

3. The record shows that the manufacturer of the PWC in question, Sea Doo, provides materials to buyers that counsels users to "[a]void wake jumping." The National Association of State Boating Law Administrators produces a model PWC Renter Orientation that tells

users, "Do not jump wakes or waves." The Personal Watercraft Industry Association tells riders to "[a]void wake jumping." In spite of these warnings, Summer Fun did not tell Hodges and McAlpine to avoid wake jumping. A conscientious rental agency would make this information known to its renters.

reports containing expert testimony on the operation of the PWC and the manner in which the accident likely occurred. One expert's report expressed the opinion that "reasonable care ... requires that a PWC rental agency provide training prior to allowing anyone to rent the PWC." Another report expressed the belief that "the principal cause of the collision ... was the entrusting of the two vessels to operators who had neither the skills nor the training necessary to operate them safely."

The district court disregarded the expert testimony "with regard to the reconstruction of the accident" because the court found that the testimony was "lacking in evidentiary support" and "speculative."[4] The court brushed aside the "equally plausible" opinions of Hodges's experts as to how the accident in fact happened. The district court instead found neither version "more probable" than "any other plausible explanation" and thus supplanted the experts' version of the accident with its own. The district court then granted summary judgment, even though it had acknowledged that "[t]he facts in this case are disputed."

Summary judgment can only be entered if "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Reviewing a district court's grant of summary judgment, we view all evidence in the light most favorable to the nonmovant. *See Gulf USA Corp. v. Fed. Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir.2001). We have reversed summary judgment in many negligence cases involving a duty-to-warn theory of liability because the factual record was insufficiently developed. *See, e.g., Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 586 (9th Cir.1996) (reversing because genuine issue of fact remained as to whether specifications of contract conflicted with contractor's duty to warn); *Cook v. Exxon Shipping Co.*, 762 F.2d 750 (9th Cir.1985) (finding triable issue of fact as to whether Exxon failed to warn plaintiff of hidden danger on vessel because "a trier of fact could reasonably find on the basis of this evidence that Exxon breached its duty to warn"); *Graves v. U.S. Coast Guard*, 692 F.2d 71 (9th Cir.1982) (reversing summary judgment because disputed factual issues remained regarding inherent dangerousness and whether warnings addressing danger should have been posted); *Rookard v. Mexicoach*, 680 F.2d 1257 (9th Cir.1982) (finding triable issue of fact whether bus line had duty to warn passengers of poor safety record of foreign bus line and of Mexican statute of limitations for tort actions). The instant case also presents a controversy where disputes of material fact should have precluded summary judgment.

The district court should have developed the factual record relating to the accident because the facts are crucial to determining whether the wake jumping in this case was obviously dangerous. Some wake jumping is dangerous and some is not. Washington law makes it a misdemeanor to "recklessly jump[ ] the wake of another vessel unreasonably or unnecessarily close to the vessel or when visibility around the vessel is obstructed." Wash. Rev. Code § 79A.60.190(5), (8). By not prohibiting

---

4. The district court provides scant support for its conclusion that the expert testimony is speculative. The district court says that one expert failed to "cite to the record to support his conclusion that [Hodges] and McAlpine had neither the skills nor the training" to operate the PWC. We know, however, that neither Hodges nor McAlpine had ever operated a PWC before. The court also questioned whether Hodges was actually "jumping wakes at the time he lost control." Both the physical circumstances surrounding the accident and the testimony of eye witnesses make clear that Hodges fell into the water after jumping a wake.

wake jumping outright, the law recognizes that non-reckless wake jumping is lawful. To understand whether Hodges and McAlpine were engaged in activities that were obviously dangerous, we have to know the facts.

The Second Circuit came to a similar conclusion in *Martell v. Boardwalk Enterprises, Inc.*, 748 F.2d 740 (2d Cir.1984). In that case, Martell was operating a jet ski that was hit by a motor boat. *See id.* at 744. The boat's impact severed the lower two-thirds of Martell's left arm. *See id.* at 745. In determining whether the manufacturer of the jet ski had a duty to warn operators of the dangers of jet ski use, the Second Circuit found relevant that Martell "had never operated a Jet Ski before the day of the accident," that "boat traffic was heavy, causing waves and choppiness on the water, with some chops as much as two feet high," "that the Jet Ski did not handle well in rough or choppy water conditions," and "that the small size and low profile of the Jet Ski tended to hinder its visibility to other watercraft, and that the choppiness of the water on August 31 further tended to obscure the Jet Ski from view." *Id.* at 744–45. Bearing in mind all of the detailed factual circumstances, the court concluded that, "[v]iewing the evidence in the light most favorable to the plaintiff ... reasonable jurors could conclude that Kawasaki breached a duty to warn of potential dangers associated with foreseeable uses of the Jet Ski." *Id.* at 747.

Like the Second Circuit in *Martell*, we must know all of the details surrounding the accident to determine whether the dangers of wake jumping in this case were open and obvious. Here, the district court dismissed relevant expert testimony, im-

properly made findings that should have been reserved to the trier of fact, and prematurely granted summary judgment despite the existence of disputed issues of material fact. Because those factual issues are critical to the outcome of this case, the district court's grant of summary judgment in favor of Summer Fun Rentals must be reversed.